William E. BROCK, Secretary of Labor, Petitioner,

v.

BECHTEL POWER CORPORATION, Respondent.

No. 85–7661.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1986.

Decided Oct. 30, 1986.

**1000**

John Shortall, U.S. Dept. of Labor, Washington, D.C., for petitioner.

Russell J. Thomas, Jr., Detroit, Mich., for respondent.

Before CHOY, ALARCON and BEEZER, Circuit Judges.

ALARCON, Circuit Judge:

William E. Brock, the Secretary of Labor (hereinafter Secretary), appeals from the decision of the Occupational Safety and Health Review Commission (hereinafter Commission) vacating a citation charging Bechtel Power Corporation (hereinafter Bechtel) with a violation of 29 C.F.R. § 1926.550(a)(9) (1985). This occupational safety standard requires accessible areas within the swing radius of the rear of the rotating superstructure of a crane to be barricaded in such a manner as to prevent an employee from being struck or crushed by the crane. The issue in this case is whether the standard set forth in 29 C.F.R. § 1926.550(a)(9) applies to the crane operator and oiler who must work inside the barricaded area. We deny the Secretary's petition for review and affirm the Commission's order vacating the citation. The Secretary's position that 29 C.F.R. § 1926.-550(a)(9) was violated by Bechtel's practice of instructing oilers to work inside the barricade is not supported by the plain language of the standard.

## I. JURISDICTION

This court has jurisdiction to review the Commission's order pursuant to 29 U.S.C. § 660(b) (1982).

## II. STANDARD OF REVIEW

■ We must uphold the Commission's decision unless it is arbitrary and capricious, not in accordance with the law, or in excess of the authority granted by the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678 (hereinafter the Act).

*Phelps Dodge Corp. v. Occupational Safety & Health Review Commission*, 725 F.2d 1237, 1239 (9th Cir.1984) (citing *Donovan v. Castle & Cooke Foods*, 692 F.2d 641, 645 (9th Cir.1982)). Generally, substantial weight is accorded to the Secretary's interpretation of his own regulation, when affirmed by the Commission. *Castle & Cooke*, 692 F.2d at 646. However, in a case such as this, where the Secretary and the Commission disagree as to the meaning and application of the regulation, the court need not grant such deference to the Secretary's interpretation. *Id.* In *Marshall v. Anaconda Co.*, 596 F.2d 370 (9th Cir.1979) we stated that "[a]lthough we have recognized that the Secretary's interpretation of his own regulation, when affirmed by the Commission, must be accorded substantial weight, it carries much less weight when at odds with the Commission's." *Id.* at 374 (citation omitted). Instead, we will defer to the Commission's expertise in exercising the independent adjudicatory function assigned it by the Act because "it is the Commission and not the Secretary which is charged with the final administrative adjudication of the Act. 29 U.S.C. § 659." *Brennan v. Occupational Safety & Health Review Commission*, 513 F.2d 713, 715–16 (8th Cir.1975); 29 U.S.C. § 651(b)(3) (the Act created the "Commission for carrying out adjudicatory functions"); *Donovan v. A. Amorello & Sons, Inc.*, 761 F.2d 61, 62–66 (1st Cir.1985) (collecting cases); *but see Brock v. Schwarz-Jordan, Inc.*, 777 F.2d 195, 197 (5th Cir.1985) ("the *Secretary's* interpretation 'is controlling as long as it is one of several reasonable interpretations, although it may not appear as reasonable as some other' ") (quoting *Brennan v. Southern Contractors Service*, 492 F.2d 498, 501 (5th Cir.1974)) (emphasis in original). Congress limited the Secretary's statutory role to promulgating, modifying, revoking and enforcing occupational safety or health standards, *see* 29 U.S.C. §§ 655, 659, and not to adjudicate a challenge to a citation. The statute gives to the Commission the power to affirm, modify, or vacate the citation or proposed penalty, or to di-

rect other appropriate relief. 29 U.S.C. § 659(c).

The Secretary contends that our holding in *Castle & Cooke*—that where the Secretary and the Commission disagree as to the meaning and application of a regulation, we need not grant deference to the Secretary's interpretation, 692 F.2d at 646—is inconsistent with *Cuyahoga Valley Railway Co. v. United Transportation Union*, —— U.S. ——, 106 S.Ct. 286, 88 L.Ed.2d 2 (1985) (per curiam) and *Dale M. Madden Construction v. Hodgson*, 502 F.2d 278 (9th Cir. 1974). We disagree.

In *Cuyahoga Valley*, the Secretary cited a railroad for a violation of the Occupational Safety and Health Act, 29 U.S.C. § 657(a), and the railroad contested the citation. 106 S.Ct. at 287. At a hearing before an Administrative Law Judge (hereinafter ALJ), the Secretary moved to vacate the citation on the ground that the Federal Railway Administration, not the Secretary, had jurisdiction over the safety conditions. The United Transportation Union objected. The ALJ granted the motion. *Id.* The Commission directed review of the ALJ's order and remanded the case to the ALJ for consideration of the union's objections. *Id.* The Court of Appeals for the Sixth Circuit affirmed the Commission's holding that it could review the Secretary's decision to withdraw a citation. *Donovan v. United Transportation Union*, 748 F.2d 340 (6th Cir.1984). The Supreme Court reversed the court of appeals and held that the Commission's "authority plainly does not extend to overturning the Secretary's decision not to issue or to withdraw a citation." 106 S.Ct. at 288. The Supreme Court did not address the issue concerning the deference owed the Secretary's interpretation of the meaning and application of a regulation where it is at odds with the Commission's interpretation.

Similarly, in *Dale M. Madden Construction*, the construction company petitioned this court for review of a decision of the Commission. 502 F.2d at 278. After we assumed jurisdiction, the Secretary "agreed to accept $150 in consideration for dismissal of Madden's petition." *Id.* at 280. The Commission then intervened to oppose the Secretary's motion for approval of the settlement. *Id.* at 279. We held that the Commission "may not contest settlements made by the Secretary." *Id.* at 281. Instead, "[t]he administrative structure limits the Commission to adjudication." *Id.* We did not consider the standard of review to be applied when the Commission's interpretation of a regulation differs from the Secretary's interpretation. Thus, *Cuyahoga Valley* and *Dale M. Madden Construction* are inapplicable to the matter before us and are not inconsistent with *Castle & Cooke.*

## III. FACTS AND PROCEDURAL HISTORY

The facts of this case are not in dispute. The alleged violation of section § 1926.-550(a)(9) occurred at a construction site in Colstrip, Montana, where Bechtel was building a coal-fired power plant. Bechtel was using five cranes in the construction work, including a Manitowoc 4000 crawler crane.

Each crane has a two-member crew, an operator and an oiler. The operator sits in the upper part of the crane, called the superstructure. The lower part of the crane, which includes the crawler tracks, is called the car body. The superstructure can rotate while the car body remains stationary. An oiler assists the operator and performs functions essential to the crane's operation. The oiler is responsible for erecting the rope-and-flag barricade around the crane, lubricating the crane and its moving parts, assisting the operator in determining when the crane's boom is clear so that loads can be moved, and keeping the crane clean, including its tracks. The oiler watches the crane's tracks in certain circumstances to warn the operator if the crane is starting to tip. The oiler also spends some time working with the operator in the cab to gain the requisite experience to become a crane operator.

A rope-and-flag barricade was strung around the entire perimeter of the crane in

question at approximately a seven foot distance. This barricade was supported by poles which protruded from each of the four corners of the track. There is no dispute that the barricade was consistent with Occupational Safety and Health Administration (hereinafter OSHA) standards and accepted industry practice.

Under the policy in effect at the time of the accident, Bechtel required crane oilers to work within the barricaded area. The lubrication activities could be performed by the oiler only if he were inside the barricaded area in direct contact with the crane.

On June 24, 1980, Jeff Brown, a crane oiler, was fatally injured while working within the barricade at the rear of the Manitowoc 4000. The accident occurred when the crane oiler was caught between the inner rear side of the crane's left crawler track and the rotating superstructure as the crane's boom swung from the front to the right.

On July 29, 1980, Bechtel was cited by the Secretary for a serious violation of 29 C.F.R. § 1926.550(a)(9), following an inspection of the construction site by a compliance officer for OSHA. Bechtel contested the citation and the Secretary issued its complaint on September 4, 1980. ALJ Raymond M. Child heard the case on December 18–19, 1980 and assessed a monetary penalty and affirmed the citation by decision and order dated April 6, 1981. The Commission granted Bechtel's petition for discretionary review, and on October 2, 1985, vacated the citation.

## IV. ANALYSIS

■ The safety standard set forth in 29 C.F.R. § 1926.550(a)(9) provides in pertinent part:

Accessible areas within the swing radius of the rear of the rotating superstructure of the crane, either permanently or temporarily mounted, shall be barricaded in such a manner as to prevent an em-

ployee from being struck or crushed by the crane.

The ALJ determined that the barricade is intended to keep employees outside the swing radius of the rear of the rotating superstructure of the crane. He affirmed the Secretary's citation because Bechtel instructed the crane oilers to work inside the barricade. In vacating the citation, the Commission explained:

The standard was not intended to require that all employees be physically restrained from the area around the crane.... The purpose of the barricade required by the standard is to warn employees that the barricaded area is dangerous and, to guide and direct them away from the crane superstructure.

The Commission concluded that Bechtel erected a proper barricade around its cranes as required by section 1926.-550(a)(9).

The Secretary contends the Commission erred as a matter of law in vacating the citation. The Secretary argues: (1) the Commission's restrictive reading of the standard fails to give any substantial weight to its protective purpose; (2) the Commission erred in concluding that the Secretary issued the citation because Bechtel gave the crane oilers inadequate safety instructions or training; and (3) the Commission's interpretation deprives a class of employees of the protective benefit of the standard.

The Secretary interprets the standard as requiring not only the erection of a physical barricade,[1] but also that employees, including the crane oiler, be denied access to the swing radius area when the crane is rotating or operating. The Secretary argues that Bechtel's affirmative order that oilers work within the barricade effectively nullifies the intent of the standard to protect employees from injury during the operation of the crane.

The Secretary argues that its interpretation is faithful to the plain language of the

---

1. In *Concrete Construction Co. v. OSHRC*, 598 F.2d 1031 (6th Cir.1979), the Sixth Circuit held that 29 C.F.R. § 1926.550(a)(9) requires the erection of a physical barricade, verbal warnings will not suffice.

standard. We disagree. The standard specifically requires that the crane be barricaded in such a manner as to prevent an employee from being struck by the crane. The standard does not by its terms bar the crane crew from duties necessary for the proper operation inside the barricaded area. The standard does not expressly prohibit workers from entering the barricaded area while a crane is in operation. The Secretary's interpretation is not faithful to the plain language of the standard.

The Secretary also contends his interpretation is faithful to the protective purpose of the Act. The central goal of the Act is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions...." 29 U.S.C. § 651(b) (1985). We agree that the Secretary's construction would further the protective purpose of the Act. The plain words of the standard drafted by the Secretary, however, do not support his interpretation. As the Commission noted, 29 C.F.R. § 1926.550(a)(9) does not in any way refer to the training instructions which should be given to employees whose duties require them to work within the barricaded area. The regulations contain a specific standard requiring employers to instruct their employees in the recognition and avoidance of unsafe conditions. *See* 29 C.F.R. § 1926.21(b)(2) (1985). The Secretary could have issued a citation for a violation of 29 C.F.R. § 1926.21(b)(2), which provides as follows: "The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury." Whether Bechtel's policy violates 29 C.F.R. § 1927.21(b)(2) is not before the court; the Secretary failed to cite Bechtel for a violation of that standard.

The Secretary's final argument is that the Commission's interpretation deprives a class of employees of the protective benefit of the standard. A crane oiler must have access to the crane to perform his work and must work in close coordination with the operator of the crane. In concluding

that the standard does not require Bechtel to prohibit the oiler's presence inside the barricaded area, the Commission recognized that it would be absurd and capricious to apply the standard to members of the crane crew who must work within the swing radius of the crane.

We agree with the Commission's conclusion that Bechtel complied with section 1926.550(a)(9) by erecting a barricade which warned employees who were not part of the crane crew to stay clear while it was in operation. Employees who have no reason to be in the area are deterred by the barricade from entering. The barricade also places the oiler on notice to be alert to the hazards of the crane's rotating superstructure.

## V. CONCLUSION

The parties agree that a barricade in compliance with 29 C.F.R. § 1926.550(a)(9) was in place. The Secretary's position that 29 C.F.R. § 1926.550(a)(9) was violated by Bechtel's practice of instructing oilers to work inside the barricade is not supported by the plain language of the standard. Section 1926.550(a)(9) does not deal with inadequate safety instructions. We express no view concerning the adequacy of Bechtel's instructions to crane oilers. That issue is not presented in citation for a violation of section 1926.550(a)(9).

The petition for review is DENIED and the order of the Commission vacating the citation is AFFIRMED.