**Thomas P. HILL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. G86–768 CA.**

United States District Court, W.D. Michigan, S.D.

July 21, 1989.

---

Andreas F. Zybell, P.C., Milford, Mich., for plaintiff.

Anne Vandermale Tuuk, Asst. U.S. Atty., Grand Rapids, Mich., James E. Carroll, Office of Sp. Litigation, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## OPINION

MILES, Senior District Judge.

This is an action for a refund of money paid to the Internal Revenue Service (IRS) as a civil penalty assessed pursuant to 26 U.S.C. § 6700. That section provides for the imposition of a penalty on those who promote "abusive tax shelters." The $32,000 penalty assessed against plaintiff resulted from his alleged involvement with a tax shelter known as O.E.C. Leasing Corporation (OEC). This matter is presently before the Court on both plaintiff and defendant's motions for partial summary judgment. The issue presented is whether the IRS correctly computed the penalty.

OEC was in the business of leasing energy management systems to investors. As provided in these leases, OEC would "pass through" energy and investment tax credits to the investor-lessees using a basis purportedly determined by the fair market value of the equipment. The IRS is claiming that the value of the equipment exceeded its correct value by more than 200 percent, thereby inflating the tax benefit that flows to the investor-lessees. The IRS contends that plaintiff participated in the sale of the OEC program to thirty-two persons.

The total penalty of $32,000 was based on a $1,000 per investor assessment. Plaintiff claims that the proper penalty should be either ten percent of the gross income he derived from all the OEC sales or a $1,000 penalty for all sales, whichever is greater. Both parties believe the plain meaning of the statute supports their position. Although this debate may at first glance suggest the statutory language is anything but equivocal, I am persuaded that the plain meaning of the statute supports defendant's position.

Statutory interpretation begins with an analysis of the statute's language. *Mallard v. United States District Court for the Southern District of Iowa,* — U.S. ——, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); *Timber Company v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). If the statutory scheme is coherent and consistent, there is no need to inquire beyond the plain language of the statute. *United States v. Ron Pair Enterprises, Inc.,* — U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If the language of the statute is clear, "the sole function of the court is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). This rule is conclusive "except in rare cases where the literal application of a statute will produce a result demonstrably at odds with the intention of the drafters[.]" *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). In such a rare situation where the statute appears to contravene intent or conflict with other statutes, courts must adopt "a restrictive rather than a literal or usual meaning of its words[.]" *Id.,* quoting *Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) and *Helvering v. Hammel,* 311 U.S. 504, 510–11, 61 S.Ct. 368, 371–72, 85 L.Ed. 303 (1941). I do not believe this is an exceptional case.

Title 26 U.S.C. § 6700 (1982) provides in pertinent part:

(e) Imposition of penalty.—Any person who—

(1)(A) organizes or assists in the organization of—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization of sale) ...

(B) a gross valuation overstatement as to any material matter,

shall pay a penalty equal to the greater of $1,000 or 10% of the gross income derived by such person from such activity.

According to the statute, "Any person who ... participates in the sale of any interest in an entity or plan or arrangement ... and makes or furnishes ... a gross valuation overstatement as to any material matter, shall pay a penalty equal to the greater of $1,000 or 10 percent of the gross income derived or to be derived by such person from such activity." The statute authorizes the imposition of a penalty whenever any person participates in a sale of an interest in an entity and furnishes a gross valuation overstatement in connection with such sale. That penalty can be either $1,000 or ten percent of gross income. A per transaction penalty is not precluded.

A different conclusion was reached in *Spriggs v. United States,* 660 F.Supp. 789 (E.D.Va.1987), *aff'd.* 850 F.2d 690 (4th Cir. 1988). The district court reasoned that if each act were to be penalized independently, Congress would have so expressly stated. The court illustrated this point with 26 U.S.C. § 6652(a), which utilizes the language "in the case of each failure" to set forth the penalty for failing to file an information return or registration statement. This is not validly premised. As set forth in *Popkin v. United States,* 699 F.Supp. 893, 896 (N.D.Ga.1988), section 6651(a) does not proscribe a combination of actions and statements, but only a single action. Section 6700 proscribes a combination of actions, making it much more difficult to attach a similarly definitive clause.

The *Spriggs* court also believed that if a per transaction penalty were to apply, Congress would have used the phrase "such organization or sale" instead of "such activity" at the end of 6700(a)(2)(B). "When Congress used the word 'activity,' therefore, it meant something different: not each sale, but rather the salesperson's overall activity of promoting abusive tax shelters." *Spriggs,* 660 F.Supp. at 791 (footnote omitted). This reasoning is too

restrictive. The phrase "such activity" is merely a shorthand method of describing the many different forms of improper behavior referred to in the preceding subsections. "To turn the argument around, if Congress had intended the penalties of section 6700 to apply to 'the salesperson's overall activity of promoting abusive tax shelters,' 660 F.Supp. at 791, it could easily have said '*overall*, activity' or 'such activi*ties* [.]' " *Popkin*, 699 F.Supp. at 896 (emphasis in original). More importantly, the *Spriggs* argument ignores elements of construction. "[D]erived or to be derived ... from such activity" modifies "gross income." Reading the final clause of (a)(2)(B) other than in the disjunctive would lead to a clearly unintended result: if an individual did not make at least $1,000 from "such activity," $1,000 could not be assessed as a penalty. Therefore, the phrase does not even apply to the $1,000 penalty.

There is not an abundance of legislative history relative to this section. The *Spriggs* court found guidance in the House Committee Report on the Tax Reform Act of 1984, Pub.L. No. 98–369, § 143(a), 98 Stat. 494, 682. This Act raised the penalty percentage. The Report states:

> The bill increases the penalty for promoting abusive tax shelters to the greater of 20 percent of the gross income derived, or to be derived, from the activity, or $1,000. The committee did not increase the $1,000 penalty because, as originally enacted, the $1,000 *was intended to be a minimum penalty on small promoters who derive little income from the deals they promote.* H.E.Rep. No. 432, 98th Cong., 2d Sess. 1, 1357–58, *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1009.

*Spriggs*, 660 F.Supp. at 792, (emphasis added in *Spriggs*). Based on this language, the court concluded that "Congress understood that some promoters ... would earn

only a few thousand dollars from all their promotion activities and, under the ten percent provision, would incur a penalty of only a few hundred dollars. These "small promoters" would therefore be penalized instead by the $1,000 minimum penalty." *Id.*, (footnote omitted).

■ Although I do not find this conclusion implausible, I do not believe the legislative history is conclusive enough to find that application of the usual meaning of the statutory language would be inconsistent with legislative intent. This Committee Report reflects the view not of the Congress that drafted the language now in question, but of a subsequent Congress, and should be afforded less weight. *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960). In addition, the underscored language is written in the plural form. If reduced to the singular, the phrase could be read, "the $1,000 was intended to be a minimum penalty on a small promoter who derives little income from the deal he or she promotes. The legislative history cited in *Spriggs* is not unyielding authority that $1,000 is the total penalty for a small promoter who engages in several minimally profitable deals.

Finally, the *Spriggs* court argues that their statutory interpretation serves to apply the penalty evenly, and, therefore, their interpretation is more correct. This same argument was expressed in *In re Tax Refund Litigation*, 698 F.Supp. 439, 442 (E.D.N.Y.1988). These courts are troubled by the fact that two salespeople who sell the same amount but use different techniques can be penalized different amounts.[1] "Moreover, it clearly contravenes the principles of statutory construction which requires courts to avoid harsh, unjust, oppressive or arbitrary results." *Id.* at 442. I am less troubled. There is nothing in the statute that prohibits alternative penalties.

1. An example of disparate results was set forth in *Spriggs*:

> [A]ssume two salespeople each have 10 partnership units to sell and that each earns $3,000 for each unit sold. Salesperson # 1 sells 10 units to 10 different people ..., and earns $30,000. Under the Service's interpreta-

tion, that salesperson's § 6700 penalty ... is $10,000.... Salesperson # 2 sells all 10 units to one person ..., and also earns $30,000.... Under the Services's interpretation, that salesperson's ... penalty is $3,000[.] 660 F.Supp. at 792.

 

It is clearly provided for and may have been formulated to allow the IRS to penalize one more heavily who has affected more individuals. Accordingly, I see no impropriety with alternative penalties, nor result demonstrably at odds with the drafters' discernible intent. And I am not convinced that a fine with a $1,000 cap assessed against one who uses fraudulent inducements to procure a transaction is unjust, excessively harsh, or arbitrary.

Even if the statutory language were ambiguous, defendant's interpretation would be upheld. Federal courts are to "accord substantial deference to an agency's interpretation of a statute 'whenever its interpretation provides a reasonable construction of the statutory language and is consistent with legislative intent.'" *Popkin,* 699 F.Supp. at 895, quoting *Securities Industry Association v. Board of Governors,* 468 U.S. 207, 217, 104 S.Ct. 3003, 3009, 82 L.Ed.2d 158 (1984). Interpretations made by the IRS "are entitled to deference because Congress has delegated the administration of the tax laws to that agency." *Johnson v. United States,* 677 F.Supp. 529, 531 (E.D.Mich.1988), *citing Commissioner v. Portland Cement Co. of Utah,* 450 U.S. 156, 101 S.Ct. 1037, 67 L.Ed.2d 140 (1981). "To sustain the IRS interpretation, the court need not find that its construction is the only reasonable one, or even that it is the result the court would have reached had the question arisen in the first instance in judicial proceedings." *Popkin,* 699 F.Supp. at 895, citing *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). The test is one of "plainly erroneous or inconsistent with the [statute.]" *Udall,* 380 U.S. at 16–17, 85 S.Ct. at 801–02 (citation omitted). Because the IRS's statutory interpretation is not inconsistent with the legislation, deference will be accorded.

In conclusion, the plain language of 26 U.S.C. § 6700 authorizes a $1,000 per transaction penalty. Such a penalty does not contravene definitive legislative intent. Alternatively, I find the IRS's interpretation reasonable. Accordingly, partial summary judgment on the issue of calculation of section 6700 penalties shall be granted in defendant's favor.