ROY BRYANT CATTLE CO., Inc.,
Plaintiff-Appellant,

v.

The UNITED STATES of America,
Defendant-Appellee.

No. 72–1256
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 28, 1972.

Jack B. Manning, Houston, Tex.
(Bean & Manning, Houston, Tex., of
counsel), for plaintiff-appellant.

James R. Gough, Asst. U. S. Atty.,
Houston, Tex., for defendant-appellee.

*[1] Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc., v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

Plaintiff, Roy Bryant Cattle Company, instituted this action in federal district court under the provisions of the Tucker Act, 28 U.S.C.A. § 1346, to recover monies allegedly wrongfully paid to the United States Department of Agriculture for overtime services performed by federal meat inspectors at the plaintiff's meat processing establishment in Houston, Texas. The district court granted the defendant's motion for summary judgment, and we affirm.

The undisputed facts are that Roy Bryant Cattle Company commenced operations as a meat processing plant subject to the Federal Meat Inspection Act, 21 U.S.C.A. §§ 601 et seq., in February of 1968. Pursuant to the provisions of that Act, the Consumer and Marketing Service of the Department of Agriculture assigned the plaintiff an establishment number and proceeded to provide the company with inspection service. At the outset the company operated for eight hours during the day, and the Department was able to tie the plaintiff into a patrol assignment in which several federal meat inspectors serviced the Roy Bryant Cattle Co. and Armour & Company, a large processing plant approximately two miles from the plaintiff's establishment. The upshot of this patrol assignment was that the plaintiff received eight hours of free inspection service every work day. Sometime in 1968 the plaintiff began operating exclusively between the hours of 12 midnight and 8:30 a. m., which is outside the operating hours observed by the majority of the meat packing establishments throughout the Houston, Texas area. This metamorphosis engendered an administrative determination by the Department of Agriculture that the plaintiff was not operating within reasonable hours. Accordingly, the Department al-

tered its inspection patrol assignments and began charging the plaintiff for an inspector's overtime work at the rate of three-and-one-half hours per day. The plaintiff paid almost $15,000 in overtime charges for more than two-and-one-half years and then instituted this suit to recover those payments. Sustaining the Department of Agriculture's interpretation of its own regulations, the district court held that the overtime charges paid by the plaintiff were properly assessed and collected.

On appeal the sole issue which commands our attention is the reasonableness of the Department of Agriculture's interpretation of the following regulation:

"The management of an official establishment, an importer, or an exporter desiring to work under conditions which will require the services of an employee of the Program on a Saturday, Sunday, or holiday, or for more than 8 hours on any other day, shall sufficiently in advance of the period of overtime, request the officer in charge or his assistant to furnish inspection services during such overtime period, and shall pay the Administrator therefor $8.00 per hour to reimburse the Service for the cost of the inspection service so furnished. . . . "

9 C.F.R. § 307.4. It is the plaintiff's contention that this regulation does not require the payment of overtime charges for inspection services unless a meat processor utilizes the services of an inspector in its own establishment for more than eight hours in any one day (excluding a Saturday, Sunday, or holiday). In other words, the company claims that this administrative directive entitles it to eight hours of free meat inspection every normal working day. The Department of Agriculture, on the other hand, has consistently interpreted the phrase "8 hours on any other day" as referring to the eight hours that an inspector works during a given day.

420

Thus, it is the Department's position that any time an inspector labors for the Department more than eight hours a day the regulation authorizes the agency to be reimbursed by the meat processor for overtime pay to that inspector, regardless of whether or not all eight hours of non-overtime pay were spent in any one establishment. Finding the Department's interpretation of the above regulation to be entirely reasonable, we affirm the judgment of the district court.

■ When a court is faced with the construction of an administrative dictate, "it is an axiom of judicial review that an administrative agency's interpretation of its own regulation . . . be accorded the greatest deference." Allen M. Campbell Co. General Contractors, Inc. v. Lloyd Wood Construction Co., 5 Cir. 1971, 446 F.2d 261, 265. Indeed, the agency's interpretation is deemed controlling as long as it is one of several reasonable interpretations and even though the chosen exegesis may not appear quite as reasonable as some other construction. *See, e. g.*, Udall v. Tallman, 1964, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616, and cases cited therein. In the instant case the Department of Agriculture's interpretation of its "overtime" regulation quite clearly implements the policy inherent in the enabling legislation:[1] that is, to reimburse the Department for necessary overtime expenses. Moreover, we find the application of that interpretation particularly reasonable within the factual context of the present case.

■ As noted above, when the plaintiff instituted operations at its establishment during the day, the Department provided the company with eight hours of free inspection. The plaintiff's deci-sion to conduct its operations entirely during a graveyard shift forced the Department to reallocate its inspectorial resources. Since the Department determined that under the new schedule the plaintiff was not operating its establishment during reasonable hours,[2] a determination which the plaintiff does not attack, that agency charged the company for the overtime pay its inspectors received as a result of the change in working hours. In effect, the Department of Agriculture determined that the plaintiff should bear the agency's overtime expenses incurred in accommodating the company's desire to operate during unreasonable hours. There is no allegation that the "overtime" regulation was discriminatorily applied to the plaintiff. Absent such a contention, we do not believe the company possesses the right, for its own operative convenience, to determine the hiring procedures and working hours of the Department's inspectorial force. It is administratively impossible for the Department to codify regulations for every permutation of plant operation, and it is for this reason that we must permit administrative latitude in the interpretation of the agency's regulations. While we do not decry the reasonableness of the plaintiff's interpretation of the "overtime" regulation as requiring that every meat processing plant be accorded eight hours of free inspection every day, we simply cannot conclude that the Administrative fabric of the Federal Meat Inspection Act *must* be tailored to suit the economic eccentricities of a particular establishment. Therefore, we feel no compunction to say nay to a carping critic. The judgment of the district court is affirmed.

Affirmed.

1. The enabling legislation provides as follows:
"The Secretary of Agriculture is authorized in his discretion, to pay employes of the Bureau of Animal ·Industry employed in establishments subject to the provisions of the Meat Inspection Act, for all overtime work performed at such establishments, at such rates as he may determine, and to accept from such establishments wherein such overtime work is performed reimbursement for any sums paid out by him for such overtime work."
7 U.S.C.A. § 394.

2. 9 C.F.R. § 307.2 provides in part: "All slaughtering of animals and preparation of products shall be done within reasonable hours and with reasonable speed."